## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TEXAS

## TYLER DIVISION

| | |
|---|---|
| ERHAN ERDEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.: |
| Plaintiff(s), | CLASS ACTION |
| v. | DEMAND FOR JURY TRIAL |
| J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III and KENNETH H. HANNAH, | |
| Defendants. | |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Erhan Erdem ("Plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by J.C. Penney Company, Inc. ("JCPenney" or the "Company"), as well as media reports about the Company and conference call transcripts. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased the common stock of JCPenney between August 20, 2013 and September 26, 2013, inclusive (the "Class Period"), against JCPenney and certain of its current officers and/or directors for violations of the Securities Exchange Act of 1934 (the "1934 Act"). These claims are asserted against JCPenney and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases, analyst conference calls, and filings with the SEC.

2.      JCPenney is a holding company. The Company is a retailer, operating 1,102 department stores in 49 states and Puerto Rico as of January 28, 2012. JCPenney's business consists of selling merchandise and services to consumers through its department stores and through its Internet Website at jcp.com. The Company sells family apparel and footwear, accessories, fine and fashion jewelry, beauty products through Sephora inside JCPenney, and home furnishings.

3.      Specifically, throughout the Class Period, defendants violated the federal securities laws by disseminating false and misleading statements to the investing public in connection with the Company's finances, assuring investors that the Company had sufficient cash through year-end. As a result of defendants' false statements, JCPenney's stock traded at artificially inflated prices during the Class Period, reaching a high of $14.47 per share on September 9, 2013.

4.      Then, on September 27, 2013, JCPenney issued a press release announcing the pricing of 84.0 million shares of its common stock at $9.65 per share in a secondary offering,

2

stating that "[t]he Company intends to use the net proceeds from the offering for general corporate purposes."

5.      On this news, JCPenney's stock plummeted $1.37 per share to close at $9.05 per share on September 27, 2013, a one-day decline of 13% on volume of 256 million shares.

6.      The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

    a)      The Company would have insufficient liquidity to get through year-end and would require additional investments to make it through the holiday season; and

    b)      The Company was concealing its need for liquidity so as not to add to its vendors' concerns.

7.      As a result of defendants' false statements, JCPenney stock traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending the stock price down over 37% from its Class Period high.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5) by the SEC. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.§1331 and §27 of the 1934 Act (15 U.S.C. §78aa).

9.      Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

10.     JCPenney maintains its principal executive offices at 6501 Legacy Drive, Plano, Texas 75024. Certain of the acts and conduct complained of herein, including dissemination of materially false and misleading information to the investing public, occurred in this District.

11.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff purchased the common stock of JCPenney during the Class Period as set forth in the certification attached hereto and was damaged as the result of defendants' wrongdoing as alleged in this complaint.

13.     Defendant JCPenney sells family apparel and footwear, accessories, fine and fashion jewelry, beauty products, and home furnishings. It also provides various services, such as styling salons, optical, portrait photography, and custom decorating.

14.     Defendant Myron E. Ullman, III ("Ullman") is, and at all relevant times was, the Company's Chief Executive Officer ("CEO") and a director.

15.     Defendant Kenneth H. Hannah ("Hannah") is, and at relevant times was, the Company's Chief Financial Officer ("CFO") and Executive Vice President.

16.     The defendants named above in ¶¶14-15 are referred to herein as the "Individual Defendants."

17.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of JCPenney's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional

4

investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

18.    Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about JCPenney. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of JCPenney common stock was a success, as it: (i) deceived the investing public regarding JCPenney's prospects and business; (ii) artificially inflated the price of JCPenney common stock; (iii) caused plaintiff and other members of the Class to purchase JCPenney common stock at inflated prices; and (iv) permitted one of JCPenney's largest shareholders to sell 39.07 million shares of its JCPenney stock at artificially inflated prices ($12.90 per share) for proceeds of over $504 million.

## BACKGROUND

19.    JCPenney, through its subsidiary, J.C. Penney Corporation, Inc., operates department stores. The Company sells family apparel and footwear, accessories, fine and fashion jewelry, beauty products through Sephora inside JCPenney, and home furnishings. Its business consists of selling merchandise and services to consumers through its department stores and through its Internet Website at jcp.com.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS
## ISSUED DURING THE CLASS PERIOD

20.     On August 20, 2013, JCPenney issued a press release announcing its fiscal second quarter 2013 financial results.[1] The Company reported net sales of $2.66 billion for the quarter ending August 3, 2013. The release further stated that "[c]ash and cash equivalents were $1.535 billion at the end of the quarter," and "[g]iven the Company's current cash position . . . the Company expects to end the year in excess of $1.5 billion in overall liquidity." The release further stated, in part:

> During the quarter, the Company bolstered its financial position by entering into a $2.25 billion senior secured term loan. The Company ended the quarter with $1.535 billion in cash and cash equivalents. Taking into account additional funds available under the credit facility, the Company's total available liquidity is $1.85 billion. Total use of cash is expected to be down substantially in the second half of the year, compared to the first half, as a result of efforts to stabilize the business and reduce capital expenditures. As noted above, the Company expects to end the year in excess of $1.5 billion in overall liquidity.

21.     After releasing its second quarter 2013 results on August 3, 2013, JCPenney hosted a conference call for analysts, media representatives and investors during which defendant Ullman represented the following:

> We obviously shared with [suppliers] the significant financial support we arranged with Goldman Sachs, which we had put in place in order to make sure that we had sufficient liquidity to effectuate the turnaround. And as mentioned in our press release, we expect to have $1.5 billion of available liquidity at year-end.

22.     During the same call, defendant Hannah represented the following:

> The financial actions we took in the quarter enable us to stabilize the business financially and provide us with the necessary resources to complete the turnaround. Given the Company's current cash position,

---

[1] JCPenney's fiscal year ends on the Saturday closest to January 31.

along with the undrawn portion of our credit facility, we expect to end the year with an excess of $1.5 billion in liquidity.

\* \* \*

Cash and cash equivalents in the quarter – second quarter of 2013 were $1.535 billion, an increase of $714 million from the end of the first quarter of 2013. Our merchandise inventory is $3.155 billion. We invested $357 million in inventory this quarter as we addressed the challenges we faced with respect to inventory in key basic items and private brands. Significant progress has been made and *we are confident we will have inventory at appropriate levels throughout the store and online well in advance of the holiday season*.

\* \* \*

Our financing cash flow was a source of $1.8 billion in the quarter, reflecting the consummation of the $2.25 billion senior secured term loan facility and the completion of the cash tender for the outstanding 7 1/8% debentures due in 2023 for $355 million. Our cash balance of $1.535 billion and the used portion of our credit facility provide the Company liquidity of $1.85 billion. *The total liquidity available to the Company is expected to be in excess of $1.5 billion at year-end given the improvements we are experiencing in the business*.[2]

23.     Later in the call, in response to a question from Sterne, Agee & Leach analyst

Charles Grom regarding the Company's liquidity, defendant Hannah stated, in part:

> We are not assuming that we see some huge trend change in the business. I think when we look at what we are seeing right now over the last several months and the improvements that we have experienced and then what we are seeing here early here in August, I think we are very comfortable that the $1.5 billion liquidity is in line for year-end.

24.     Also during the call, defendant Ullman had the following exchange with JP

Morgan analyst Matthew Boss:

> [BOSS:] And then looking forward do you think you would need any additional outside liquidity?

---

[2] Emphasis added unless specific otherwise.

> [HANNAH:] We are certainly – as we look through the end of the year, the $1.5 billion of liquidity that we have projected we are not assuming that we need any additional financing.

25.     On this news, JCPenney stock closed up 6% to $14.01 per share from its previous day's close of $13.22 per share.

26.     On August 27, 2013, Pershing Square Capital Management LP was able to sell 39 million shares of JCPenney stock at $12.90 per share for proceeds of $504 million.

27.     On September 9, 2013, JCPenney reached its Class Period high of $14.47.

28.     On September 25, 2013, Kristin McDuffy, an analyst at Goldman Sachs Group, Inc., reported that JCPenney would need to take on additional debt to ensure that it had enough cash to keep its business operations going, and that a "combination of weak fundamentals, inventory rebuilding, and an underperforming home department" could lead the Company to liquidity problems in the third quarter.

29.     On this news, JCPenney stock dropped $1.78 per share to close at $10.12 per share on September 25, 2013, a one-day decline of nearly 15% on high trading volume.

30.     On September 26, 2013, JCPenney issued a press release announcing a proposed public offering of its common stock, which stated in part:

> J. C. Penney Company, Inc. (the "Company") announced today that it has commenced an underwritten public offering of 84.0 million shares of its common stock. The Company intends to use the net proceeds from the offering for general corporate purposes.

31.     Also on September 26, 2013, JCPenney issued a press release entitled "JCPenney Responds to Inquiries," which stated in part:

> In response to inquiries, JCPenney said today that it is pleased with its progress thus far in the Company's turnaround efforts and the traction its initiatives are starting to achieve. Moreover, the Company said it is starting to see greater predictability in its performance across many areas.

8

> The Company continues to be encouraged by improvements in purchase conversion both in store and on jcp.com, primarily due to being back in stock in key items and sizes the customer expects to find at JCPenney. Overall sales on jcp.com continue to trend double digits ahead of last year.
>
> The Company still anticipates it will experience positive comparable store sales trends coming out of the third quarter and throughout the fourth quarter of 2013.

32.    Subsequently, on September 26, 2013, Citigroup, Inc. analyst Deborah Weinswig issued a report to investors indicating that JCPenney "may need to raise capital to cushion against a potentially challenging holiday season" if it runs through cash faster than estimates.

33.    Then, on September 27, 2013, JCPenney issued a press release entitled "J. C. Penney Announces Pricing of Public Offering of Common Stock," which stated in part: J. C. Penney Company, Inc. (the "Company") announced today that the previously announced underwritten public offering of 84.0 million shares of its common stock priced to the public at $9.65 per share. The Company intends to use the net proceeds from the offering for general corporate purposes. The offering is expected to close on October 1, 2013, subject to certain customary conditions. The Company has granted the underwriters a 30-day option to purchase up to an additional 12.6 million shares of common stock.

34.    On this news, JCPenney's stock plummeted $1.37 per share to close at $9.05 per share on September 27, 2013, a one-day decline of 13% on volume of 256 million shares.

35.    The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

a)    The Company would have insufficient liquidity to get through year-end and would require additional investments to make it through the holiday season.

b)    The Company was concealing its need for liquidity so as not to add to its vendors' concerns.

36.    As a result of defendants' false statements, JCPenney stock traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down over 37% from their Class Period high.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired JCPenney common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

38.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. JCPenney has over 220 million shares of stock outstanding, owned by hundreds if not thousands of persons.

39.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a)    whether the 1934 Act was violated by defendants;

b)    whether defendants omitted and/or misrepresented material facts;

c)    whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d)    whether defendants knew or deliberately disregarded that their statements were false and misleading;

10

e)      whether the price of JCPenney common stock was artificially inflated; and

f)      the extent of damage sustained by Class members and the appropriate measure of damages.

40.      Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

41.      Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

42.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

43.      Plaintiff incorporates ¶¶1-42 by reference.

44.      During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.      Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

a)      employed devices, schemes and artifices to defraud;

b)      made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c)      engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of JCPenney common stock during the Class Period.

11

46.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for JCPenney common stock. Plaintiff and the Class would not have purchased JCPenney common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

47.     Plaintiff incorporates ¶¶1-46 by reference.

48.     The Individual Defendants acted as controlling persons of JCPenney within the meaning of §20(a) of the 1934 Act. By virtue of their positions with the Company, and ownership of JCPenney stock, the Individual Defendants had the power and authority to cause JCPenney to engage in the wrongful conduct complained of herein. JCPenney controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding plaintiff and the members of the Class damages, including interest;

C.     Awarding plaintiff's reasonable costs and attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:   October 7, 2013                                    Respectfully submitted,

**SCHWARTZ, JUNELL, GREENBERG
   & OATHOUT, LLP**


   */s/ Roger B. Greenberg*

ROGER B. GREENBERG
State Bar No. 08390000
Federal I.D. No. 3932
Two Houston Center
909 Fannin, Suite 2700
Houston, TX 77010
Telephone:  713/752-0017
Facsimile:  713/752-0327
rgreenberg@sjgolaw.com

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com


**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com


*Attorneys for Plaintiff*

13

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1.  I, Erhan Erdem, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.  I have reviewed a Complaint against J.C. Penney Company, Inc. ("JC Penney"), and authorize a filing of a comparable complaint on my behalf.

3.  I did not purchase my JC Penney securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.  I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my purchases and sales in JC Penney securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.  The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

**Executed**

(Date)   10/03/2013

*erhan erdem*   (Signature)

Erhan Erdem   (Type or Print

**Summary of Purchases and Sales**

JC PENNEY CO INC (JCP)                                                          **Erdem, Erhan**

### LIST OF PURCHASES AND SALES

| ACCOUNT | DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---------|------|------------------|-------------------|-----------------|
| Erdem, Erhan | 8/22/2013 | PUR | 10,000 | $13.1800 |
| Erdem, Erhan | 8/22/2013 | PUR | 9,120 | $13.2200 |
| Erdem, Erhan | 8/22/2013 | PUR | 571 | $13.2100 |
| Erdem, Erhan | 8/22/2013 | PUR | 209 | $13.2000 |
| Erdem, Erhan | 8/22/2013 | PUR | 100 | $13.2100 |
| Erdem, Erhan | 8/22/2013 | SLD | 800 | $13.2200 |
| Erdem, Erhan | 8/22/2013 | SLD | 4,192 | $13.2200 |
| Erdem, Erhan | 8/22/2013 | SLD | 10,000 | $13.3100 |
| Erdem, Erhan | 8/23/2013 | PUR | 8,700 | $13.2900 |
| Erdem, Erhan | 8/23/2013 | PUR | 1,300 | $13.2900 |
| Erdem, Erhan | 8/23/2013 | SLD | 10,000 | $13.3400 |
| Erdem, Erhan | 8/23/2013 | SLD | 5,008 | $13.3200 |
| Erdem, Erhan | 8/26/2013 | PUR | 14,500 | $13.4000 |
| Erdem, Erhan | 8/26/2013 | PUR | 500 | $13.4000 |
| Erdem, Erhan | 8/26/2013 | PUR | 15,000 | $13.4000 |
| Erdem, Erhan | 8/26/2013 | SLD | 15,000 | $13.4500 |
| Erdem, Erhan | 8/26/2013 | SLD | 15,000 | $13.4500 |
| Erdem, Erhan | 9/25/2013 | PUR | 25,000 | $10.7700 |
| Erdem, Erhan | 9/25/2013 | PUR | 25,000 | $10.8000 |
| Erdem, Erhan | 9/25/2013 | SLD | 25,000 | $10.8500 |
| Erdem, Erhan | 9/26/2013 | SLD | 25,353 | $9.7300 |
| Erdem, Erhan | 9/26/2013 | SLD | 5,400 | $9.7300 |
| Erdem, Erhan | 9/26/2013 | SLD | 5,391 | $9.7400 |
| Erdem, Erhan | 9/26/2013 | SLD | 3,856 | $9.8100 |
| Erdem, Erhan IRA | 9/18/2013 | PUR | 29,500 | $13.5700 |
| Erdem, Erhan IRA | 9/26/2013 | SLD | 29,000 | $10.5300 |
| Erdem, Erhan IRA | 9/26/2013 | SLD | 500 | $10.5400 |

erdem